## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| IN RE: | Chapter 11 |
| CONFIRMATRIX LABORATORY, INC., | Case No.: |
| Debtor. | |

**MOTION PURSUANT TO 11 U.S.C. §§ 105(a), 363(b), 503(b), 507(a)(4), AND 507(a)(8), AND BANKRUPTCY RULES 6003 AND 6004, FOR ENTRY OF ORDER, (A) AUTHORIZING, BUT NOT DIRECTING, DEBTOR TO (I) PAY CERTAIN EMPLOYEE COMPENSATION AND BENEFITS AND (II) MAINTAIN AND CONTINUE SUCH BENEFITS AND OTHER EMPLOYEE-RELATED PROGRAMS AND (B) AUTHORIZING AND DIRECTING BANKS AND FINANCIAL INSTITUTIONS TO HONOR AND PROCESS CHECKS AND TRANSFERS RELATED TO SUCH OBLIGATIONS**

Confirmatrix Laboratory, Inc. ("Debtor") as debtor in possession in the above-captioned case hereby files this *Motion pursuant to 11. U.S.C. §§ 105(a), 363(b), 503(b), 507(a)(4), and 507(a)(8) and Bankruptcy Rules 6003 and 6004, for Entry of an Order, (a) Authorizing, but not Directing, Debtor to (i) Pay Certain Employee Compensation and Benefits and (ii) Maintain and Continue Such Benefits and Other Employee-related Programs and (b) Authorizing and Directing Banks and Financial Institutions to Honor and Process Checks and Transfers Related to Such Obligations* (the "Motion"). In support of this Motion, Debtor respectfully represents:

### JURISDICTION AND VENUE

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are sections 105(a), 363(b),

503(b), 507(a)(4), and 507(a)(8) of Title 11 of the United States Code (the "Bankruptcy Code")
and Rules 6003 and 6004 the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

BACKGROUND

3.      On the date herewith (the "Petition Date"), Debtor commenced a voluntary case
under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the
Northern District of Georgia, Atlanta Division (the "Court"). Debtor continues to operate its
business as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.
No request for the appointment of a trustee or examiner has been made in this Chapter 11 case
and no committees have been appointed or designated.

FACTUAL BACKGROUND

1.      Debtor is a Georgia corporation with a principal place of business located at 1770
Cedars Road, Suite 200, Lawrenceville, GA 30045. Debtor's business is providing laboratory
services, including, but not limited to, comprehensive clinical quantitative urine, blood, and oral
fluid drug testing, medication monitoring, and support services.

2.      Debtor's laboratory business is focused on two main areas of laboratory testing
services: toxicology and blood testing. Debtor, although historically very profitable, began
experiencing financial troubles when recent changes to Medicare's reimbursement rates resulted
in a decrease of Debtors' revenue from its toxicology testing business. The blood testing side of
the business has been for the most part unaffected by the Medicare changes and continues to be a
profitable and viable business.  As a result, Debtor's recent efforts have been focused on
exploring options for restructuring its business to include a possible sale as a going concern or

restructure the business to focus its operations on the blood testing business.  Apparently in response to recent reduction in the reimbursement rate, the Debtor's lender, SunTrust Bank ("SunTrust"), despite being significantly oversecured, filed a complaint in the Gwinnett County Superior Court for the appointment of a receiver over Debtor's assets.  If that proceeding had been allowed to proceed, there is a substantial risk that the Debtor's operations would be shut down and approximately 150 employees would immediately be out of work.  The filing of the Chapter 11 provided the relief required to allow Debtor to proceed with an orderly reorganization and will maximize the value of the enterprise.

RELIEF REQUESTED

3.     Debtor is requesting authority for the following acts:

(i) make all payments required under or related to (i) Wage Obligations, (ii) Payroll Taxes and Deductions, (iii) Fringe Benefits, (iv) Expense Reimbursement, and (v) Health and Welfare Benefits, and (vi) the 401(k) Plan, (all as defined herein and, collectively, the "Employee Obligations") and all costs incident to the foregoing, and to continue to honor its practices, programs and policies for its employees, as those practices, programs and policies were in effect as of the Petition Date and as such practices, programs and policies may be modified, amended, or supplemented from time to time in the ordinary course of Debtor's business;

(b) authorize and direct all banks and financial institutions providing services to Debtor (the "Banks") to receive, honor, process, and pay any and all checks and wire transfers drawn on Debtor's accounts in satisfaction of the Employee Obligations to the extent that Debtor has sufficient funds standing to its credit with such Bank, and to rely on the representations of

Debtor as to which checks are issued and authorized to be paid in accordance with this Motion without any duty of further inquiry and without liability for following Debtor's instructions;

(c) remit to third parties various funds that have been withheld or will be withheld or deducted from employees' paychecks; and

(d) pay all taxes associated with prepetition employee wages, including, but not limited to, income tax withholdings.

<u>BASIS FOR RELIEF REQUESTED</u>

<u>Debtor's Prepetition Employee Obligations</u>

4.      As of the Petition Date, Debtor has approximately 152 employees, of which 73 are hourly and 79 salaried.  Debtor's employees work in 15 different states with 70 located in Georgia, 26 in Tennessee, 17 in Kentucky, 10 in North Carolina, 5 in Ohio, 5 in Texas, 4 in Florida, 4 in Washington, 3 in Michigan, 2 in New York,  2 in Pennsylvania, 1 in Oklahoma, 1 in Montana, 1 in Indiana, and 1 in Utah. None of Debtor's employees currently are represented by labor unions or covered by a collective bargaining agreement. The total per pay period cost of all wages and benefits payable to these employees amounts to approximately $307,000.00 in wages and $23,082.36 in benefits. The employees subject to this Motion have been paid current with the exception of the current billing cycle which is due to be paid on November 11, 2016. Debtor does not believe that any of its employees are owed in excess of the $12,475.00 priority cap for wages, benefits and other employee programs described herein.

5.      Debtor generally divides its employee base into the following categories of employees: (a) executives; (b) clerical and administrative employees; (c) laboratory personnel; (d) specimen collectors, and (e) sales representatives.

6.     As described more fully below, Debtor's ability to operate its business depends on the continued loyalty and morale of its employees, as well as their specialty training and skills. As a laboratory testing services provider, any delay in the processing of regular wage or benefits payments to its employees would cause Debtor and its business irreparable harm.

OBLIGATIONS TO EMPLOYEES

A.     <u>Wage Obligations</u>

7.     Debtor's employees (the "<u>Employees</u>") are paid every two weeks, one week in arrears. Prior to the Petition Date, the average weekly payroll for employees, including wages, salaries, and overtime (collectively, the "<u>Wage Obligations</u>") was approximately $307,000.00. Debtor pays its Wage Obligations by direct deposit (97%) and live checks (3%), and Debtor's payroll is administered by Paycor, Inc. ("<u>Paycor</u>"). Debtor issued the most recent paychecks to its Employees on October 28, 2016, which satisfied all amounts owed to Employees through October 23, 2016. Debtor's next payroll is due November 11, 2016 which would satisfy all amounts owed through November 6, 2016. Debtor seeks authority to continue to honor and process all pre- and post-petition obligations with respect to Wage Obligations.

B.     <u>Payroll Taxes and Deductions</u>

8.     Pursuant to applicable federal, state and local laws, Debtor is required to withhold from the Employees' wages amounts related to federal, state, and local income taxes, and social security and Medicare taxes (collectively, the "<u>Withholding Taxes</u>") and to remit the same to the appropriate taxing authorities (collectively, the "<u>Taxing Authorities</u>"). In addition, Debtor is required to make matching payments from its own funds on account of social security and Medicare taxes, and to pay additional amounts to the Taxing Authorities for, among other things,

state and federal unemployment insurance (collectively, the "Employer Payroll Taxes" and, together with the Withholding Taxes, the "Payroll Taxes"). Debtor's payroll provider, Paycor, remits the Payroll Taxes to the Taxing Authorities. Debtor's bi-weekly liability for Payroll Taxes as of the Petition Date is approximately $85,358.00, of which approximately $64,290.02 comes directly from employees' paychecks and $21,068.47 from Debtor. Debtor seeks authority to continue to honor and process all pre- and post-petition obligations with respect to Payroll Taxes.

C.    Fringe Benefits

9.    Debtor also provides Employees with vacation pay and sick pay (collectively, "Fringe Benefits"). Debtor provides vacation time and sick time for eligible Employees. To be eligible to receive Fringe Benefits, Employees must have been employed by Debtor for more than ninety (90) days.

10.    These benefits are usual and customary in Debtor's industry and allow Debtor to retain qualified employees to operate its business. Accordingly, Debtor seeks authority to continue to honor outstanding pre-petition obligations with respect to these items in the ordinary course of business and to continue these programs post-petition in accordance with its terms, as deemed necessary to continue to operate and preserve value in the exercise of its business judgment.

D.    Expense Reimbursements

11.    Debtor's Employees are offered full reimbursement for any expenses incurred on behalf of Debtor (the "Expense Reimbursements"). The Employees are reimbursed for these items because these expenses are incurred in connection with Debtor's businesses. Debtor incurs approximately $500.00-$1,000.00 per month in Expense Reimbursements. As of the Petition

Date, Debtor estimates that there will be approximately $945.92 in Expense Reimbursements that remain outstanding. To avoid harming the Employees who incurred Expense Reimbursements, Debtor seeks the authority to continue its Expense Reimbursements in accordance with prepetition practices, and to honor and pay all unpaid Expense Reimbursements.

Additionally, Debtor provides approximately twenty seven (27) employees with American Express credit cards (the "Corporate Cards") to pay ordinary course business expenses. Debtor pays American Express directly for the business charges and fees incurred in connection with the Corporate Cards. All, but one, of the Corporate Cards have an unlimited credit limit and one card has a limit of $3,000.00. Debtor submits that American Express should be directed to continue providing Corporate Cards services under its agreements with Debtor (the "Corporate Card Agreements"), to be prevented from canceling or refusing to allow further charges, and to continue allowing the use of the Corporate Cards up to the allowable limit. Debtor also requests that the Court provide that no new extraordinary offsets will be imposed by American Express and that Debtor's relationship with American Express be handled using the same procedures and bases as in the past.

E.    <u>Health and Welfare Benefits</u>

12.    Debtor's Employees are provided with a standard range of health, dental, vision and disability coverage and other welfare benefits. The insurance premiums for individual enrollment for the health and dental plans are funded by Debtor and the Employees in the following percentages sixty percent (60%) by Debtor and forty (40) percent by Employees. Employees are responsible for paying all of their vision plan, short term and long term disability

plans, life insurance, and any other insurance plans provided by AFLAC. Debtor's various employees' benefit plans and policies can be divided into the following categories (collectively, the "Health and Welfare Benefits"):

      (a)    Debtor provides medical coverage and prescription drug coverage through fully-insured programs (the "Medical Plans"). Blue Cross Blue Shield of Georgia ("Blue Cross") is the insurance provider for the Medical Plans;

      (b)    Debtor provides dental coverage through Sunlife Dental also known as Sun Life Assurance Company of Canada ("Sunlife") (the "Dental Plan");

      (c)    Debtor also offers for Employees to purchase at their own cost vision coverage (the "Vision Plan"). The Vision Plan is administered by Blue Cross. The Vision Plan provides coverage for eye exams, glasses, or contact lenses; and

      (d)    Debtor also offers for Employees to purchase at their own cost life insurance and short term and long term disability (the "Life Insurance"), which is provided through Greater Georgia Life Insurance Company ("Greater Georgia").

13.    The only benefit plans for which Debtor is partially responsible for funding are the Medical Plan and the Dental Plan.  Employees are also eligible to purchase optional Vision Insurance and Life Insurance (the "Voluntary Insurance") which is deducted along with the other plans from their paychecks. The insurance premiums associated with the Voluntary Insurance are entirely funded by the Employees who choose to enroll. As such, as of the Petition Date, Debtor does not owe any amounts for this coverage; however, Debtor may have certain prepetition obligations with respect to the amounts deducted from Employees' payroll that are owed, in turn, to the respective insurance providers.

14.    As of the Petition Date, Debtor believes that the following approximate amounts have been accrued but unpaid on account of the afore-mentioned plans: (i) $180,738.62 for the Medical Plans and Vision Plan; (ii) $713.44 for the Life Insurance; (iii) $18,595.66 for the Dental Plan.

15.    The Health and Welfare Benefits are usual and customary in Debtor's industry and allow Debtor to retain qualified employees to operate its business. Accordingly, Debtor seeks authority to continue to honor outstanding pre-petition obligations with respect to these items in the ordinary course of business and to continue these programs post-petition in accordance with its terms, as deemed necessary to continue to operate and preserve value in the exercise of its business judgment.

F.    401(k) Plans.

1.    Debtor's Employees are provided with the option to participate in a 401(k) retirement plan (the "401(k) Plan"). The Employees make bi-weekly contributions to the 401(k) through withholdings from their paychecks. Debtor contributes/matches the Employees' contributions by making a lump sum deposit once per year. The average bi-weekly contribution by the Employees to the 401k Plan is approximately $8,100.00. The average bi-weekly Debtor matching contribution is approximately $4,262.00. The administrator of the 401(k) Plan is Guardian Insurance & Annuity Co. Retirement Solutions ("Guardian"). As of the Petition Date, Debtor believes that approximately $162,442.54, comprised of both Debtor's and Employees' contributions, has been accrued but unpaid on account of the 401(k) Plan.

## Payment of Employee Obligations Should be Authorized

2.    The payment of the Employee Obligations is warranted under sections 105(a), 363,

507(a)(4), and 541(d) of the Bankruptcy Code and applicable caselaw.

3.      Pursuant to section 507(a)(4) and (a)(5) of the Bankruptcy Code, claims against Debtor for wages, salaries, or commissions, including vacation, severance, and sick leave pay earned within 180 days before the Petition Date, and claims against Debtor for contributions to employee benefit plans arising from services rendered within those 180 days are afforded priority unsecured status to the extent of $12,475 per individual.

4.      Debtor believes that substantially all, if not all, of the Employee Obligations relating to the period prior to the Petition Date constitute priority claims under sections 507(a)(4) of the Bankruptcy Code. Debtor does not believe it owes any Employee more than $12,475 on account of wage obligations. As priority claims, these obligations must be paid in full before any general unsecured obligations of Debtor may be satisfied unless otherwise ordered by the Court. Accordingly, the relief requested may affect only the timing of the payment of these priority obligations and will not prejudice the rights of general unsecured creditors or other parties in interest.

5.      Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." A bankruptcy court's use of its equitable powers to "authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept."[1] "[C]ourts have used its equitable power under section 105(a) of the [Bankruptcy] Code to authorize the payment of pre-petition claims when such payment is deemed necessary to

_____

the survival of a debtor."[2]

6.     Additionally, federal courts consistently have permitted post-petition payment of pre-petition obligations where necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors.[3] This doctrine of necessity functions in a Chapter 11 case as a mechanism by which a bankruptcy court can exercise its equitable power to facilitate a successful restructuring of Debtor's businesses by allowing payment of critical pre-petition claims not explicitly authorized by the Bankruptcy Code. Accordingly, pursuant to section 105(a) of the Bankruptcy Code, the Court is empowered to grant the relief requested herein.

7.     Debtor's employees are among its most valuable assets and are absolutely vital to Debtor's restructuring efforts. It is imperative that employee morale be maintained and that Debtor has the authority to ensure that Debtor's employees do not unduly suffer as a consequence of the commencement of this Chapter 11 case. Indeed, in the absence of granting the relief requested herein, the employees will suffer undue economic hardship and, in many instances, serious financial difficulties, as the amounts in question are needed to enable certain of the employees to meet its own personal financial obligations. Without the requested relief, the stability of Debtor will be irreparably undermined by the distinct possibility that otherwise loyal employees will seek other employment alternatives. In addition, it would be inequitable to require Debtor's employees to bear personally the cost of any Expense Reimbursements they

---

[2] *In re Ionosphere Clubs, Inc.,* 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (affirming order authorizing payment of pre-petition wages pursuant to section 363(b) of the Bankruptcy Code).
[3] *See J.M. Blanco, Inc. v. PMCMktg. Corp.,* No. CIV 09-1781(GAG), 2009 WL, 5184458, at *5 (D.P.R. Dec. 22, 2009) ("Thus, pursuant to the debtor in possession's role as the equivalent of a trustee, the bankruptcy court is authorized to use its equitable powers under section 105(a) in aid of preservation or enhancement of the estate."); *In re Just for Feel,* 242 B.R. at 825 ("The Supreme Court, the Third Circuit and the District of Delaware all recognize the court's power to authorize payment of pre-petition claims when such payment is necessary for the debtor's survival during chapter 11.").

incurred pre-petition, for the benefit of Debtor, with the understanding that they would be reimbursed.

8.      Accordingly, continued payment, without interruption, of the Employee Obligations is necessary and essential and will assure a smooth transition into Chapter 11. Indeed, if the relief requested herein is not granted, Debtor's business operations will not only suffer but its ability to continue as an ongoing viable business could be seriously threatened, to the detriment and prejudice of all parties in interest.

<u>Cause Exists To Authorize Payment of Payroll Taxes</u>

9.      In addition, the payment of the Payroll Taxes will not unduly prejudice other creditors of Debtor's estates.

10.     First, most, if not all, of the Payroll Taxes are afforded priority status under section 507(a)(8) of the Bankruptcy Code. These include unsecured claims of governmental units for "a tax on or measured by income or gross receipts for a taxable year ending on or before [the Petition Date],"[4] or "a tax required to be collected or withheld and for which the debtor is liable in whatever capacity."[5] Accordingly, as priority claims, many of such pre-petition Payroll Taxes must be paid in full before any general unsecured obligations of Debtor may be satisfied.

11.     Moreover, section 541(d) of the Bankruptcy Code excludes from property of the bankruptcy estate any property in which the debtor holds, as of the petition date, only legal title. The Payroll Taxes withheld from wages on behalf of the applicable Taxing Authority fall within this category as they are held in trust by Debtor. As such, these taxes do not constitute property

---

[4] 11 U.S.C. § 507(a)(8)(A).
[5] 11 U.S.C. § 507(a)(8)(C).

of Debtor's estate pursuant to section 541 of the Bankruptcy Code.[6] As a consequence, Debtor would not have an equitable interest in such Payroll Taxes, and assuming they could be adequately identified and traced, such amounts would not constitute property of Debtor's estate and would not be subject to the automatic stay.[7] To the extent the Payroll Taxes are not property of Debtor's estate, these funds are not available for the satisfaction of creditors' claims. Debtor, therefore, should be permitted to remit such funds to the Taxing Authorities as they come due.

12.     Lastly, many federal, and Georgia statutes impose personal liability on the shareholders and officers for certain taxes owed by such entities. Thus, to the extent that the relevant Payroll Taxes remain unpaid by Debtor, Debtor's shareholders and officers may be subject to lawsuits during the pendency of this Chapter 11 case. Any such litigation (and the ensuing potential liability) will inevitably distract Debtor and its employees from devoting their full attention to Debtor's business and the orderly administration of this Chapter 11 case. The payment of Debtor's prepetition Payroll Taxes will eliminate such possible and unnecessary penalties and business expenses and will contribute to the preservation of Debtor's value.

<u>Administering Payroll and Employment Obligations</u>

---

[6] *See, e.g., Begier v. IRS*, 496 U.S. 53, 59-61 (1990) (money payable for trust fund taxes are property held by the debtor in trust for another and, as such, are not property of the debtors' estates); *Al Copeland Enters., Inc.* v. *Texas*, 991 F.2d 233, 237 (5th Cir. 1993) (debtors' pre-petition collection of sales taxes and interest thereon were held subject to trust and were not property of the estate); *Thibodeau v. U.S.*, 828 F.2d 1987 (11th Cir. 1987) (employee withholding taxes, even if in corporate bank account, constitute "trust funds of the United States"); *Matter of Wellington Foods, Inc.*, 165 B.R. 719, 720, 723 (Bankr. S.D. Ga. 1994) (employee withholding taxes are "trust-fund taxes" held in trust for benefit of taxing authority and were not property of the estate); *Matter of Pippinger*, 117 B.R. 756, 758 (Bankr. M.D. Ga. 1990) (employee withholding taxes are "trust fund" taxes); *In re Gilley Consulting Engineers, Inc.*, 74 B.R. 568, 569 (Bankr. N.D. Ga. 1987) ("Trust fund taxes are those deducted and withheld by employers from their employees' wages and are deemed to be held in trust for the United States.").
[7] *See City of Farrell* v. *Sharon Steel Corp.*, 41 F.3d 92, 95-96 (3d Cir. 1994); *In re Penton*, No. 12-12167-WHD, 2013 WL 1208748, at *3 (Bankr. N.D. Ga. Feb. 15, 2013) ("It is well settled in bankruptcy practice that debtors do not own an equitable interest in property held in trust for another, and consequently, such funds do not constitute 'property of the estate' for bankruptcy purposes."); *In re Sissine*, 432 B.R. 870, 883 (Bankr. N.D. Ga. 2010) (holding that IRS did not violate automatic stay in offsetting debtor's pre-petition tax refund against debtor's employment tax liabilities because the refund itself, as opposed to the debtor's interest in the tax refund, did not constitute property of the estate).

13.    In addition, Debtor believes it is necessary to continue payment of administrative fees to the administrators of the Employee Obligations. Without the continued services of these administrators, Debtor would be unable to continue to honor the Employee Obligations in an efficient and cost-effective manner. Given the necessity of administering the payroll and administering the Employee Obligations, Debtor respectfully submits that this relief is necessary and warranted in this chapter 11 case.

Authorization for Banks

14.    Debtor requests that the Court authorize and direct the Banks on which checks are drawn or electronic funds are transferred with respect to the Employee Obligations to receive, process, honor, and pay, to the extent of funds on deposit, any and all such checks or electronic transfers, whether such checks or transfers were issued before or after the Petition Date, upon the receipt by each such bank of notice of such authorization without further order of the Court.

15.    Further, Debtor also requests that the Court authorize and direct the Banks to rely on the representations of Debtor as to which checks are issued and authorized to be paid in accordance with this Motion without any duty of further inquiry and without liability for following Debtor instructions. Given, the necessity of paying the Employee Obligations, Debtor respectfully submits that this relief is necessary and warranted.

REQUIREMENTS OF BANKRUPTCY RULE 6003 ARE SATISFIED

16.    Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm." Debtor submits that this Motion may be granted under the "immediate and irreparable harm" exception to Bankruptcy Rule 6003(b). As explained above, Debtor and its reorganization

efforts would be irreparably harmed if it were unable to pay the Employee Obligations. As such, the relief requested in this Motion is necessary to avoid immediate and irreparable harm to Debtor's business operations and the value of Debtor's estates.

## WAIVER OF BANKRUPTCY RULES 6004(a) AND (h)

17.    To implement the foregoing successfully, Debtor seeks a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14 day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

## RESERVATION OF RIGHTS

18.    Nothing contained herein is intended or should be construed as an admission of the validity of any claim against Debtor, a waiver of Debtor's rights to dispute any claim, or an approval or assumption of any agreement, contract, or lease under section 365 of the Bankruptcy Code. Debtor expressly reserves its rights to contest any invoice or claim related to the relief requested herein in accordance with applicable law.

**WHEREFORE,** Debtor respectfully requests that the Court enter an order, substantially in the form attached hereto as Exhibit "A," (i) granting the relief requested herein, and (ii) granting Debtor such other and further relief as is just and proper.

Respectfully submitted this 4th day of November, 2016.

[Signature On Following Page]

15

JAMES-BATES-BRANNAN-GROOVER-LLP

By:  /s/ J. William Boone
J. William Boone
Georgia Bar No. 067856
Doroteya N. Wozniak
Georgia Bar No. 627491
3399 Peachtree Road, N.E., Suite 1700
Atlanta, Georgia 30326
(404) 997-6020
(404) 997-6021 (fax)
bboone@jamesbatesllp.com
dwozniak@jamesbatesllp.com
*Counsel for Confirmatrix Laboratory, Inc.*

EXHIBIT "A"
PROPOSED ORDER

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| IN RE: | Chapter 11 |
| CONFIRMATRIX LABORATORY, INC., | Case No.: |
| Debtor. | |

**ORDER ON DEBTOR'S MOTION, PURSUANT TO 11 U.S.C. §§ 105(a), 363(b), 503(b), 507(a)(4), AND 507(a)(8), AND BANKRUPTCY RULES 6003 AND 6004, FOR ENTRY OF ORDER, (A) AUTHORIZING, BUT NOT DIRECTING, DEBTOR TO (I) PAY CERTAIN EMPLOYEE COMPENSATION AND BENEFITS AND (II) MAINTAIN AND CONTINUE SUCH BENEFITS AND OTHER EMPLOYEE-RELATED PROGRAMS AND (B) AUTHORIZING AND DIRECTING BANKS AND FINANCIAL INSTITUTIONS TO HONOR AND PROCESS CHECKS _AND TRANSFERS RELATED TO SUCH OBLIGATIONS_**

The above-captioned case came before the Court on February 20, 2015, for consideration of Debtor's _Motion pursuant to 11. U.S.C. §§ 105(a), 363(b), 503(b), 507(a)(4), and 507(a)(8) and Bankruptcy Rules 6003 and 6004, for Entry of an Order, (a) Authorizing, but not Directing, Debtor to (i) Pay Certain Employee Compensation and Benefits and (ii) Maintain and Continue Such Benefits and Other Employee-related Programs and (b) Authorizing and Directing Banks and Financial Institutions to Honor and Process Checks and Transfers Related to Such Obligations_ (the "Motion") filed by Confirmatrix Laboratory, Inc., debtor and debtor-in-possession in the above-styled Chapter 11 case ("Debtor"). [8]

In the Motion Debtor represented that the payment of the Employee Benefits is in the

---

[8] All capitalized terms not otherwise defined shall have the meanings set forth in the Motion.

best interest of Debtor, Debtor's estate, and all interested parties.

After reviewing the pleadings and based upon the representations of counsel, the Court concludes that (i) this Court has jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief requested therein is a core proceeding pursuant to 28 U.S.C. § 157; and venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and (ii) good cause exists to grant the Motion and it is in the best interest of Debtor's estate and its creditors. **ACCORDINGLY,**[9]

**IT IS HEREBY ORDERED** that the Motion is GRANTED; and it is further

**ORDERED** that Debtor is authorized, but not directed, to pay prepetition claims, to honor obligations, and continue programs, in the ordinary course of business, relating to (a) Wage Obligations, (b) Payroll Taxes and Deductions, (c) Fringe Benefits, (d) Expense Reimbursement, (e) Health and Welfare Benefits, and (f) the 401(k) Plan; (collectively, the "Employee Obligations"), provided, however, that Debtor shall not make any payment on account of prepetition Wage Obligations in excess of $12,475 without further order of this Court; and it is further

**ORDERED** that Debtor is authorized, but not directed, to continue to honor its practices, programs, and policies with respect to its employees as such practices, programs, and policies were in effect as of the Petition Date, including the Employee Obligations;

**ORDERED** that Debtor is authorized, but not directed, to pay any and all costs in

---

[9] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.

connection with maintaining administration or paying third parties to maintain, administer, and provide recordkeeping relating to the Employee Obligations that may be outstanding as of the Petition Date in the ordinary course of business; and it is further

**ORDERED** that any credit card companies providing services to Debtor, including, but not limited to, American Express, is authorized and directed to continue to perform its services as such have normally and customarily been performed prior to the Petition Date, including honoring post-petition charges, and is enjoined from taking any action that will impair the Debtor's continued use of all such credit cards; and it is further

**ORDERED** that any party receiving payment from Debtor is authorized and directed to rely upon the representations of Debtor as to which payments are authorized by this Order; and it is further

**ORDERED** that the Banks on which checks were drawn or electronic payment requests made in payment of the obligations approved herein are authorized and directed to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such Banks are authorized to rely on Debtor's designation of any particular check or electronic payment request as approved by this Order; and it is further

**ORDERED** that nothing in this Order or the Motion shall be construed as prejudicing any rights Debtor may have to dispute or contest the amount of or basis for any claims asserted against Debtor arising in connection with the Employee Obligations or as an admission as to the validity or priority of any claim against Debtor.

**ORDERED** that nothing in the Motion or this Order shall be deemed to (a) authorize the

payment of any amounts that may be subject to section 503(c) of the Bankruptcy Code or (b) violate or permit a violation of section 503(c) of the Bankruptcy Code; and it is further

**ORDERED** that nothing in the Motion or this Order shall be deemed or construed as an approval of an assumption or rejection of any contract pursuant to section 365 of the Bankruptcy Code and all such rights are reserved; and it is further

**ORDERED** that requirements set forth in Bankruptcy Rule 6003(b) have been satisfied by the contents of the Motion or otherwise deemed waived; and it is further

**ORDERED** that notice of the Motion as provided therein shall be deemed good and sufficient notice, and the requirements of Bankruptcy Rule 6004(a) have been satisfied by such notice or otherwise deemed waived; and it is further

**ORDERED** that notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry; and it is further

**ORDERED** that all time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a); and it is further

**ORDERED** that Debtor is authorized and empowered to take all actions necessary to implement the relief granted in this Order; and it is further

**ORDERED** that this Court retains jurisdiction with respect to all matters arising from or related to the interpretation, implementation or enforcement of this Order; and it is further

**ORDERED AND NOTICE IS HEREBY GIVEN** that any objection to the relief requested in the Motion must be filed with the Clerk of the United States Bankruptcy Court, Northern District of Georgia, 75 Ted Turner Drive, SW, Atlanta, GA 30303, and served upon

counsel for Debtor, J. William Boone, James-Bates-Brannan-Groover-LLP, 3366 Peachtree Rd.

N.E., Suite 1700, Atlanta, GA 30326, <u>within thirty (30) days from the date of service of this</u>

<u>Order.</u> In the event any written objections are filed within said period then a hearing will be held

on notice to the objecting party and Debtor. In the event no objections are timely filed to the

Motion, this Order shall become a final Order of the Court; and it is further

      **ORDERED** that Debtor shall serve this Order and Notice on all the parties affected by

the Motion, the United States Trustee, all parties who have filed requests to receive notice, and

the twenty (20) largest unsecured creditors and certify service of the same within three (3) days.

**[END OF DOCUMENT]**

<u>Prepared by:</u>

/s/ J. William Boone
J. William Boone
Georgia Bar No. 067856
Doroteya N. Wozniak
Georgia Bar No. 627491
3399 Peachtree Road, N.E.
Suite 1700
Atlanta, Georgia 30326
(404) 997-6020
(404) 997-6021 (fax)
bboone@jamesbatesllp.com
dwozniak@jamesbatesllp.com
*Counsel for Confirmatrix Laboratory, Inc.*

<u>Identification of parties to be served pursuant to BLR 9013-2(b) NDGa.:</u>

See Attached Service List

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| IN RE: | Chapter 11 |
| CONFIRMATRIX LABRATORY, INC., | Case No.: |
| Debtor. | |

## CERTIFICATE OF SERVICE

I hereby certify that on this day, I served true and correct copies of the foregoing pleading by depositing said copies in the United States mail, with adequate first class postage affixed thereon, properly addressed to the parties on the service list as follows:

Blue Cross Blue Shield of GA
P.O. Box 5281
Carol Stream, IL 60197-5281

Sun Life Financial
P.O. Box 7247-0381
Philadelphia, PA 19170-0381

AFLAC
P.O. Box 427
Columbia, SC 29202

This 4th day of November, 2016.

/s/ J. William Boone
J. William Boone
Georgia Bar No. 067856
Doroteya N. Wozniak
Georgia Bar No. 627491