UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE: | Chapter 11 |
| CONFIRMATRIX LABORATORY, INC., | Case No.: 16-69934 |
| Debtor. | |

DECLARATION OF ANN B. DURHAM
IN SUPPORT OF FIRST DAY MOTIONS

Ann B. Durham deposes and says:

1.

I have been employed by Confirmatrix Laboratory, Inc. ("Debtor") since June 2013. Through the years, I have held different positions with my current position being the Chief Executive Officer and a member of the Board of Directors. From June 2013 until June 10, 2016, I held the positions of Director of Operations and Chief Operating Officer. From June 10, 2016 until now, I have been the Chief Executive Officer. Furthermore, on May 3, 2016, I was voted onto the Debtor's Board of Directors. Accordingly, I am familiar with Debtor's day-to-day operations, business and financial affairs.

2.

On the date hereof (the "Petition Date"), Debtor filed a petition (the "Petition") with this Court under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). Debtor is operating its business as a debtor in possession.

## **General Background**

3.

Debtor is an independent laboratory formed on July 5, 2012 that currently employs about 152 employees and conducts broad urine, blood, and oral fluid drug testing, medication monitoring, and other support services. Its headquarters are located at 1770 Cedars Rd., Suite 200, Lawrenceville, Georgia 30045.

4.

Debtor's shareholders are as follows:
- a) Premier Worldwide, LLC (29 shares);
- b) Hanan Iqab Sarhan (17.5 shares),
- c) Atallah D. Salaheddin (10 shares),
- d) Hanane Jabar (6 shares),
- e) Paul Wesley Warrington (5 shares),
- f) Zakaria Alnimr (5 shares),
- g) Mohamed Saaifan (5 shares),
- h) Khalil K. Elkassas (3.5 shares),
- i) Ghaleb Uqab Alhajdalh (3 shares),
- j) Hicham Sadeq (2.5 shares),
- k) Ali Hdabe (2.5 shares),
- l) Bsesou Holding Group, LLC (2 shares),
- m) Eman Ahmad Alganim (2 shares),
- n) Eiyad A. Ishnineh (1.5 shares),
- o) Kyle Mahmoud Dabe (1.5 shares),
- p) Manar Mhamad Alabdalh (1 share),

    q) Jasmin Al-Baghdadi (1 share), [1]
    r) Hamadan Dajeh (1 share),[2] and
    s) Sarah Al-Baghdadi (1 share).

5.

Debtor's laboratory business is focused on two main areas of laboratory testing services: toxicology and blood testing. Debtor, although historically very profitable, began experiencing financial troubles when recent changes to Medicare's reimbursement rates resulted in a decrease of Debtor's revenue from its toxicology testing business. The blood testing side of the business has been for the most part unaffected by the Medicare changes and continues to be a viable business.

6.

As a result, Debtor's recent efforts have been focused on exploring options for restructuring its business to include a possible sale as a going concern or restructure the business to focus its operations on the blood testing business. Apparently in response to recent reduction in the reimbursement rate, the Debtor's lender SunTrust Bank ("SunTrust"), despite being significantly oversecured, filed a complaint in the Gwinnett County Superior Court for the appointment of a receiver over Debtor's assets. If that proceeding had been allowed to proceed, there is a substantial risk that the Debtor's operations would be shut down and approximately 152 employees would immediately be out of work. The filing of the Chapter 11 will provide the

---

[1] Jasmin Al-Baghdadi is also an employee of Debtor.
[2] Hamadan Dajeh is also an employee of Debtor.

3

relief required to allow Debtor to proceed with an orderly reorganization and will maximize the value of the enterprise.

### First Day Motions

7.

Debtor has filed five "first day" motions (the "First Day Motions"):

(a) *Motion for (I) Interim and Final Orders Authorizing Interim and Final Use of Cash Collateral by Debtor-in-Possession Pursuant to 11 U.S.C. § 361 and 363; and (II) To Schedule a Final Hearing* (the "Cash Collateral Motion");

(b) *Motion for Entry of an Order Authorizing Continued Use of Pre-Petition Bank Accounts* (the "Motion to Continue Use of Pre-Petition Bank Accounts");

(c) *Motion Pursuant to 11 U.S.C. §§ 105(a), 363(b), 503(b), 507(a)(4), and 507(a)(8), and Bankruptcy Rules 6003 and 6004, for Entry of an Order (A) Authorizing, but not Directing, Debtor to (I) Pay Certain Employee Compensation and Benefits and (II) Maintain and Continue Such Benefits and Other Employee-Related Programs and (B) Authorizing and Directing Banks and Financial Institutions to Honor and Process Checks and Transfers Related to Such Obligations* (the "Motion to Pay Employee Obligations");

(d) *Motion for Entry of an Order (I) Deeming Utility Companies Adequately Assured of Payment Pursuant to 11 U.S.C. § 366; (II) Prohibiting Utility Companies from Altering, Refusing, or Discontinuing Utility Services; and (III) Establishing Procedures for Resolving Requests for Additional Assurance* (the "Utilities Motion");

(e)     *Application for Approval of Employment of James-Bates-Brannan-Groover-LLP as Counsel for Debtor* (the "Motion to Employ"); and

(f)     *Motion to Shorten Time*.

8.

With respect to the Cash Collateral Motion, Debtor is indebted to SunTrust in the approximate amount of $4,000,000.00 pursuant to that certain commercial note granting a revolving line of credit up to $6,000,000.00 by and between Debtor and SunTrust dated February 1, 2016 (the "Note"). As of Petition Date, the Debtor is current on its interest payments in connection with the Note. The repayment of any obligations arising from the Note was purportedly secured by a Security Agreement (Commercial) by and between SunTrust and Debtor dated February 1, 2016, where Debtor purportedly granted SunTrust a security interest in substantially all of Debtor's assets, including accounts receivable, inventory, and equipment (the "SunTrust Collateral"). Parts of the SunTrust Collateral purportedly constitute cash collateral as that term is defined by 11 U.S.C § 363(a) (the "Cash Collateral").[3]

9.

As of the Petition Date, Debtor's primary assets are valued at approximately $10,670,000.00-12,770,000.00 and consist of (i) 2.5 acres of land and certain improvements located thereon, more commonly known as 1770 Cedars Road, Suite 200, Lawrenceville, Gwinnett County, GA 30045 (the "Real Property"), with a current tax assessors' value of

---

[3] Nothing contained herein shall be interpreted as an admission of the validity, priority, and/or extent of SunTrust's lien(s) and specifically whether any post-petition cash and accounts receivable constitute cash collateral as defined by 11 U.S.C. § 363(a).

5

$1,275,000.00; (ii) approximately $6-7 million in collectible accounts receivable; (iii) $95,000.00 in cash; and (iv) equipment consisting of 22 laboratory diagnostic machines commonly referred to as LCMS machines with estimated value between $3.3 million and $4.4 million (the "Equipment"). The Real Property is unencumbered property which houses Debtor's laboratory and headquarters. Debtor also has a capital lease with SunTrust Equipment Finance & Leasing Corp. for 5 additional LCMS machines with estimated value between $750,000.00 and $1,000,000.00 (the "Capital Leases"). As of the Petition Date, the outstanding balance on these Capital Leases was $ 365,599.37. [4]

10.

As of the Petition Date, Debtor's bank accounts are located at SunTrust and United Community Bank ("UCB"). Debtor has two accounts with SunTrust – operating and payroll/reserve account, and one operating account with UCB. Debtor's accounts are not lockbox accounts and neither SunTrust nor UCB is allowed control of Debtor's operating accounts.

11.

In its Cash Collateral Motion, Debtor petitioned the Court to allow use of the Cash Collateral in accordance with the proposed budget attached as Exhibit A to the Cash Collateral Motion and in exchange with the proposed provision of adequate protection to SunTrust as further detailed in the Cash Collateral Motion. The income and expenses set out on Exhibit A to

---

[4] Debtor reserves its right to challenge the classification of the capital lease with SunTrust Equipment Finance & Leasing Corp.

6

the Cash Collateral Motion are substantially similar to Debtor's pre-petition income and expenses. The use of the Cash Collateral is in the best interest of Debtor and the estate and is required to avoid irreparable harm. Allowing Debtor to use the Cash Collateral ensures that Debtor can continue to function as an ongoing business, and, thus, is in the best interest of Debtor, its creditors and the estate. On information and belief, Debtor will incur numerous expenses in the normal and ordinary course of business that require payment. In addition, Cash Collateral is required in order to continue its payroll obligations to its employees without whom the Company could not survive. The use of the Cash Collateral will allow Debtor to continue to fund its operations, pay post-petition obligations in due course, operate in the ordinary course, preserve the on-going value of Debtor's business, as well as provide a realistic opportunity for the Debtor to reorganize.

12.

With respect to the Motion to Continue Use of Pre-Petition Bank Accounts, Debtor is essentially requesting approval of retaining its current bank accounts and getting an exemption from complying with the Operating Guidelines and Reporting Requirements for Debtors in Possession and Chapter 11 Trustees. In connection with the operation of its business, Debtor maintains three bank accounts (the "Bank Accounts") with two different financial institutions – a main operating account with SunTrust, a payroll/reserve account with SunTrust, and an operating account with United Community Bank. These accounts are more fully described on Exhibit A of the Motion to Continue Use of Pre-Petition Bank Accounts. Debtor believes that the continuation

of its Bank Accounts is essential to a smooth transition into Chapter 11. Two of the existing Bank Accounts are held at SunTrust Bank, which is designated as an Authorized Depository Institution by the United States Trustee Program's Atlanta Office within Region 21. As SunTrust Bank is an Authorized Depository Bank and already has a financial relationship with Debtor, the closing of the existing Bank Account and opening of a new account within the same financial institution would offer no security benefit and would unduly burden Debtor's reorganization under Chapter 11. Further, the third of the Bank Accounts is held at United Community Bank and is in close proximity to the Debtor's operations, thus placing an undue burden on Debtor and its operations if it were forced to relocate its account. Allowing the Debtor to continue using its Bank Accounts would preserve business continuity and avoid the operational paralysis that would accompany the closing of its accounts and the re-establishment of new ones. Debtor's operations will be substantially harmed if Debtor is not authorized to use its Bank Accounts.

13.

With respect to the Utilities Motion, Debtor obtains electricity, water, telephone, gas, and/or other services of this general character (collectively, "Utility Services") from various utility companies (the "Utility Companies"). The Utility Companies that were providing services to the Debtor as of the Petition Date are listed on Exhibit "A" to the Utility Motion. On average, Debtor spends approximately $14,000.00 each month on utility service costs. As of the Petition Date, Debtor believes it owes approximately $10,224.32 to the Utility Companies. Debtor will have sufficient liquidity to pay post-petition utility invoices and administrative expenses from the

proceeds of its operations in full and on a timely basis. Preserving utility services on an uninterrupted basis is essential to Debtor's ongoing operations and, therefore, to the success of its reorganization. Any interruption of utility services, even for a brief period of time, would disrupt Debtor's ability to continue servicing its customers, thereby negatively impacting customer relationships, revenues, and profits, and, severely jeopardizing Debtor's reorganization efforts. Therefore, it is critical that utility services continue uninterrupted during this Chapter 11 Case.

14.

With respect to the Motion to Pay Employee Obligations, as of the Petition Date, Debtor has approximately 152 employees, of which 73 are hourly and 79 are salaried employees. Debtor's employees work in 15 different states with 70 located in Georgia, 26 in Tennessee, 17 in Kentucky, 10 in North Carolina, 5 in Ohio, 5 in Texas, 4 in Florida, 4 in Washington, 3 in Michigan, 2 in New York, 2 in Pennsylvania, 1 in Oklahoma, 1 in Montana, 1 in Indiana, and 1 in Utah. None of the Debtor's employees currently are represented by labor unions or covered by a collective bargaining agreement. The total per pay period cost of all wages and benefits payable to these employees amounts to approximately $307,000.00 in wages and $23,082.36 in benefits. The employees subject to this Motion have been paid current with the exception of the current billing cycle which is due to be paid on November 11, 2016. Debtor does not believe that any of its employees are owed in excess of the $12,475.00 priority cap for wages, benefits and other employee programs described herein. Debtor generally divides its employee base into the following categories of employees: (a) executives; (b) clerical and administrative employees; (c)

9

laboratory personnel; (d) specimen collectors, and (e) sales representatives. Debtor's ability to operate its business depends on the continued loyalty and morale of its employees, as well as their specialty training and skills. As a laboratory testing services provider, any delay in the processing of regular wage or benefits payments to its employees would cause Debtor and its business irreparable harm.

15.

Furthermore, the Employees are paid every two weeks, one week in arrears. Prior to the Petition Date, the average payroll for employees, including wages, salaries, and overtime (collectively, the "Wage Obligations") was approximately $307,000.00. Debtor pays its Wage Obligations by a live check and direct deposit (97%) and live checks (3%), and Debtor's payroll is administered by Paycor, Inc. ("Paycor"). Debtor issued the most recent paychecks to its Employees on October 28, 2016, which satisfied all amounts owed to Employees through October 23, 2016. As stated above, Debtor's next payroll is due November 11, 2016 which would satisfy time through November 6, 2016. Debtor seeks authority to continue to honor and process all pre- and post-petition obligations with respect to Wage Obligations.

16.

Furthermore, Debtor is required to withhold from the Employees' wages amounts related to federal, state, and local income taxes, and social security and Medicare taxes (collectively, the "Withholding Taxes") and to remit the same to the appropriate taxing authorities (collectively, the "Taxing Authorities"). In addition, Debtor is required to make matching payments from its

own funds on account of social security and Medicare taxes, and to pay additional amounts to the Taxing Authorities for, among other things, state and federal unemployment insurance (collectively, the "Employer Payroll Taxes" and, together with the Withholding Taxes, the "Payroll Taxes"). Debtor's payroll provider, Paycor, remits the Payroll Taxes to the Taxing Authorities. Debtor's total per pay period liability for Payroll Taxes as of the Petition Date is approximately $85,358.00 of which approximately $64,290.02 comes directly from employees' paychecks and $21,068.47 from Debtor. Debtor seeks authority to continue to honor and process all pre- and post-petition obligations with respect to Payroll Taxes.

17.

Debtor also provides Employees with vacation pay and sick pay (collectively, "Fringe Benefits"). Debtor provides vacation time and sick time for eligible Employees. Employees who have been employed by Debtor for less than 90 days are not eligible for Fringe Benefits. Employees are reimbursed for any expenses incurred on behalf of the Debtor (the "Expense Reimbursements"). The Employees are reimbursed for these items because these expenses are incurred in connection with Debtor's business. Debtor incurs approximately $500.00-$1,000.00 per month in Expense Reimbursements. As of the Petition Date, Debtor estimates that there will be approximately $945.92 in Expense Reimbursements that remain outstanding. Debtor seeks authority to continue to honor and process all pre- and post-petition obligations with respect to Fringe Benefits and Expense Reimbursements.

18.

Furthermore, Debtor provides approximately twenty seven (27) employees with American Express credit cards (the "Corporate Cards") to pay ordinary course business expenses. Debtor pays American Express directly for the business charges and fees incurred in connection with the Corporate Cards. All, but one, of the Corporate Cards have an unlimited credit limit and one card has a limit of $3,000.00. Debtor submits that American Express should be directed to continue providing Corporate Cards services under its agreements with Debtor (the "Corporate Card Agreements"), to be prevented from canceling or refusing to allow further charges, and to continue allowing the use of the Corporate Cards up to the allowable limit.

19.

Furthermore, Debtor's Employees are provided with a standard range of health, dental, vision and disability coverage and other welfare benefits. The insurance premiums for individual enrollment for the health and dental plans are funded by the Debtor and the Employees in the following percentages: sixty perfect (60%) by Debtor and forty (40%) by Employees. Employees are responsible for paying all of their vision plan, short term and long term disability plans, life insurance, and any other plans provided by AFLAC. Debtor's various employees' benefit plans and policies can be divided into the following categories (collectively, the "Health and Welfare Benefits"):

(a) Debtor provides medical and prescription drug coverage through fully-insured programs (the "Medical Plans"). Blue Cross Blue Shield of Georgia ("Blue Cross") is the insurance provider for the Medical Plans;

(b) Debtor provides dental coverage through Sunlife Dental also known as Sun Life Assurance Company of Canada ("Sunlife") (the "Dental Plan");

(c) Debtor also offers for Employees to purchase at their own cost vision coverage (the "Vision Plan"). The Vision Plan is administered by Blue Cross. The Vision Plan provides coverage for eye exams, glasses, or contact lenses;

(d) Debtor also offers for Employees to purchase at their own cost life insurance and short term and long term disability (the "Life Insurance"), which is provided through Greater Georgia Life Insurance Company ("Greater Georgia").

20.

The only benefit plans for which Debtor is partially responsible for funding are the Medical Plan and the Dental Plan. Employees are also eligible to purchase optional Vision Insurance and Life Insurance (the "Voluntary Insurance") which is deducted along with the other plans from their paychecks. The insurance premiums associated with the Voluntary Insurance are entirely funded by the Employees who choose to enroll. As such, as of the Petition Date, Debtor does not owe any amounts for this coverage; however, Debtor may have certain prepetition obligations with respect to the amounts deducted from Employees' payroll that are owed, in turn, to the respective insurance providers.

21.

Furthermore, as of the Petition Date, Debtor believes that the following approximate amounts have been accrued but unpaid on account of the afore-mentioned plans: (i) $180,738.62 for Medical Plans and Vision Plan; (ii) $713.44 for the Life Insurance; and (iii) $18,595.66 for the Dental Plan.

22.

Debtor's Employees are provided with the option to participate in a 401(k) retirement plan (the "401(k) Plan"). In each pay period, the Employees make contributions to the 401(k) Plan through withholdings from their paychecks. Debtor contributes/matches the Employee's contributions by making a deposit on a monthly basis. The average pay period contribution by the Employees to the 401k Plan is approximately $8,100.00. The average pay period Debtor matching contribution is approximately $4,262.00. The administrator of the 401(k) Plan is Guardian Insurance & Annuity Co. Retirement Solutions ("Guardian"). As of the Petition Date, Debtor believes that approximately $162,442.54, comprised of both Debtor's and Employees' contributions, has been accrued but unpaid on account of the 401(k) Plan.

23.

Furthermore, all of the foregoing benefits for which Debtor seeks permission to provide pre-petition and continue providing post-petition are usual and customary in Debtor's industry and allow Debtor to retain qualified employees to operate its business.

24.

With respect to Motion to Employ, Debtor shows that in order to administer this case in a proper, efficient, and economical manner, it will require the services of legal counsel. Debtor seeks to employ the law firm of James-Bates-Brannan-Groover-LLP ("JBBG"), 3399 Peachtree Road, N.E., Suite 1700, Atlanta, Georgia 30326, (404) 997-6020, as counsel for Debtor. Debtor believes the employment of JBBG is in the best interest of Debtor's estate. Debtor further shows that the attorneys practicing with JBBG's bankruptcy practice group are admitted to practice in this Court, have knowledge and experience with regard to the matters in which the firm is to be engaged, and are well qualified to represent Debtor. Debtor's qualifications to represent Debtor are more fully described in Exhibit A of Debtor's Motion to Employ.

25.

With respect to all First Day Motions, I believe that, absent prompt approval of First Day Motions, Debtor's business and estate will suffer immediate and irreparable harm.

26.

I declare under penalty of perjury that the foregoing is true and correct.

This 4th day of November, 2016.

*(signature)*
Ann B. Durham

[Notarization unnecessary pursuant to 28 U.S.C. § 1746]

15

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| IN RE: | Chapter 11 |
| CONFIRMATRIX LABORATORY, INC., | Case No.: 16-69934 |
| Debtor. | |

## CERTIFICATE OF SERVICE

I hereby certify that on this day, I served true and correct copies of the foregoing pleading by filing same with the CM/ECF electronic-filing system and depositing same in the United States mail, with adequate first class postage affixed thereon, properly addressed to the parties on the service list as follows:

See Attached Service List

This 4th day of November, 2016.

/s/ J. William Boone

J. William Boone
Georgia Bar No. 067856
Doroteya N. Wozniak
Georgia Bar No. 627491

360 Medical Supplies, Inc.
815 Progress Court Suite A
Lawrenceville, GA 30043

AT&T
P.O. Box 105262
Atlanta, GA 30348-5262

Bio Rad
P.O. Box 849740
Los Angeles, CA 90084-9740

Blue Cross Blue Shield of GA
P.O. Box 5281
Carol Stream, IL 60197-5281

Compliance S.O.S.
2001 Big Sky Lane
Franklin, TN 37067

FedEx
P.O. Box 660481
Dallas, TX 75266-0481

GNOS Medical
Suite 1800
1130 Hurricane Shoals Rd, NE,
Lawrenceville, GA 30043

Garner Group, LLC
1206 State Blvd
Franklin, TN 37064

Georgia Power
96 Annex
Atlanta, GA 30396-0001

Gwinnett Co. Tax Commissioner
P.O. Box 372
Lawrenceville, GA 30046

Newegg, Inc.
Attn: Accts Receivable
17560 Rowland St
Rowland Heights, CA 91748

Phenomenex
P.O. Box 749397
Los Angeles, CA 90074

Quest Diagnostics
P.O. Box 740736
Atlanta, GA 30374-0736

Siemens Healthcare Diagnostics
P.O. Box 121102
Dallas, TX 75312-1102

Sun Life Financial
P.O. Box 7247-0381
Philadelphia, PA 19170-0381

The Hartford
P.O. Box 660916
Dallas, TX 75266-0916

TransProma INc.
3145 Northwoods Pwky Suite 300
Norcross, GA 30071

UCT, LLC
2731 Bartram Road Bristol
Bristol, PA 19007

UPS
P.O. Box 7247-0244
Philadelphia, PA 19170-0001

Wondfo USA Co. Ltd
545 Willowbrook Center Pkwy
Unit B
Willowbrook, IL 60527

Office of the United States Trustee
Richard B Russell Federal
75 Ted Turner Drive, SW
Atlanta, GA 30303

SunTrust Bank
c/o Frank DeBorde, Esq.
Morris, Manning & Martin, LLP
3343 Peachtree Rd NE
Suite 1600, Atlanta Financial Center
Atlanta, GA 30326

SunTrust Equipment Finance & Leasing Corp
c/o Frank DeBorde, Esq.
Morris, Manning & Martin, LLP
3343 Peachtree Rd NE
Suite 1600, Atlanta Financial Center
Atlanta, GA 30326

American Express
Box 360001
Fort Lauderdale, FL 33336-0001