UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CONFIRMATRIX LABORATORY, INC., | ) | Case No. 16-69934-PWB |
| | ) | |
| Debtor. | ) | |
| | ) | |

**RESPONSE TO UNITED STATES TRUSTEE'S OBJECTION TO
DEBTOR'S MOTION FOR AN ORDER APPROVING
STRUCTURED DISMISSAL OF CASE**

Confirmatrix Laboratory, Inc. (the "Debtor"), by and through its undersigned counsel, hereby files this response (the "Response") to the United States Trustee's Objection to Debtor's Motion for an Order Approving Structured Dismissal of Case (the "Objection") [ECF No. 247]. In support of this Response, the Debtor respectfully states:

**PRELIMINARY STATEMENT**

The Motion should be granted because authority for using the structured dismissal created by the Supreme Court of the United States does exist. Furthermore, a structured dismissal in the case adequately protects creditors, as any dismissal must be found by the bankruptcy court to be in the best interest of the creditors and the estate. Lastly, the requested dismissal may not even constitute a structured dismissal as the only payments to be made prior to the actual dismissal are to the U.S. Trustee for any outstanding fees owed and to the three administrative claimants pro rata. There will be no payments made to creditors and, thus, there

will not be any payments made that otherwise would normally be made only under a confirmed plan of liquidation. Thus, the proposed dismissal should be granted because the Debtor has shown that effectuation of a plan is impossible, and that a dismissal is the most efficient and expeditious administration of this case which maximizes the return on allowed claims. Unpaid administrative claims to professionals will likely exhaust the remaining funds on hand, and prolonging the case further by converting it to a Chapter 7 proceeding is not likely to result in any recovery for unsecured creditors, particularly considering that the shortfall in being able to satisfy administrative claims in full exceeds $300,000.

## RESPONSE

**A. The Supreme Court of the United States has recognized the structured dismissal; therefore, authority establishing a Debtor's ability to use a structured dismissal exists.**

Contrary to the U.S. Trustee's contention, authority establishing that a debtor may receive a structured dismissal in a Chapter 11 proceeding exists. *See Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973 (2017). Although the United States Trustee (the "Trustee") cites a lack of statutory authority as a reason to deny the Debtor's Motion, the Trustee ignores the authority created by the Supreme Court of the United States in which a debtor may use a structured dismissal so long as the structured dismissal provides for distributions to creditors that follow the Bankruptcy Code's priority scheme. *See Jevic,* 137 S. Ct. at 980.

The Supreme Court acknowledged that conditions of a particular bankruptcy case may change in ways that make a restoration of the status quo difficult or impossible from dismissal,

2

explaining that the Code permits the bankruptcy court, "for cause," to alter a Chapter 11 dismissal's ordinary restorative consequences. *Id* at 979; § 349(b). The Supreme Court further explained that a dismissal that alters a Chapter 11's ordinary restorative consequences, or a dismissal which has other special conditions attached, is often referred to as a "structured dismissal." *Id* at 979. The Supreme Court included the American Bankruptcy Institute's definition of a structured dismissal: a "hybrid dismissal and confirmation order ... that ... typically dismisses the case while, among other things, approving certain distributions to creditors, granting certain third-party releases, enjoining certain conduct by creditors, and not necessarily vacating orders or unwinding transactions undertaken during the case." *Id* (quoting American Bankruptcy Institute Commission To Study the Reform of Chapter 11, 2012–2014 Final Report and Recommendations 270 (2014)). Finally, the Supreme Court directly addressed the Trustee's contention that no statutory authority creating the structured dismissal exists by stating in *Jevic*, **"[a]lthough the Code does not expressly mention structured dismissals, they 'appear to be increasingly common.'"** *Id*. The *Jevic* case addressed only the question whether a bankruptcy court has the legal power to order **priority-skipping** kind of distribution scheme in connection with a Chapter 11 dismissal where there was no consent to do so. *Id.* at 978. The Supreme Court was careful to say that it expresses no view about the legality of structured dismissals in general. *Id.* at 985. Indeed, as previously noted, Section 349(b) specifically contemplates dismissals that retain the effectiveness of orders issues during the course of the case. Therefore, authority for using a structured dismissal that proposes distributions in accordance with the Bankruptcy Code's priority scheme and retention of the effectiveness of

3

Bankruptcy Court orders post dismissal, which is exactly what the Debtor has proposed, does exist.

**B. Structured dismissals and dismissals generally have been found to sufficiently protect creditors under 11 U.S.C. § 1112(b)(1) as bankruptcy courts are charged with determining that such dismissal is in the best interest of the creditors and the estate.**

Creditors are adequately protected under a Chapter 11 dismissal, whether structured or otherwise, because of Section 1112(b)'s condition that bankruptcy courts must determine whether a dismissal is in the best interests of the creditors and the estate. 11 U.S.C. § 1112(b). The best interests of the creditors test address the interests of the creditor body as a whole. *See In re Brooks*, 488 B.R. 483, 489 (Bankr. N.D. Ga. 2013); *see In re Schultz*, 436 B.R. 170, 179 (Bankr. M.D. Fla. 2010); *In re OptInRealBig.com, LLC*, 345 B.R. 277, 290 (Bankr. D. Colo. 2006); *In re Buffet Partners, L.P.*, No. 14-30699-HDH-11, 2014 WL 3735804, at *2 (Bankr. N.D. Tex. July 28, 2014). The interests of individual creditors are protected by the requirement that a court examine the best interests of the estate. *OptInRealBig.com*, 345 B.R. at 290; *Buffet Patners*, No. 14-30699-HDH-11, 2014 WL 3735804, at *2. The focus of the best interest of the estate test is on the economic value of the debtor. *OptInRealBig.com*, 345 B.R. at 290; *See In re BH S & B Holdings, LLC*, 439 B.R. 342, 346 (Bankr. S.D.N.Y. 2010). "This test compares the economic value of the debtor in a converted case to its value after dismissal." *OptInRealBig.com*, 345 B.R. at 290; *In re Staff Inv. Co.*, 146 B.R. 256 (Bankr. E.D. Cal. 1992). When a court determines that a debtor's economic value is maximized from dismissal of the case rather than

4

from conversion, the court places creditors in the best position to recover on their claims. *In re Buffet Partners*, L.P., No. 14-30699-HDH-11, 2014 WL 3735804, at *2 (Bankr. N.D. Tex. July 28, 2014). Here, the best interest of the creditors test and best interest of the estate test both support dismissal of this case.

First, dismissal of a Chapter 11 bankruptcy case meets the best interests of the creditors' test where a debtor has nothing to reorganize and the debtor's assets are fixed and liquidated. *See In re Brogdon Inv. Co.*, 22 B.R. 546, 549 (Bankr. N.D. Ga. 1982) (court dismisses Chapter 11 case where there was "simply nothing to reorganize" and no reason to continue the reorganization).

Here, the Debtor generated substantially diminished sales during its last six (6) months of operation and ceased all operations by the end of August 2017, and all of its remaining assets of the estate have been liquidated and its two secured creditors were paid approximately $4,750,000 in full satisfaction of their claims. The Debtor made every reasonable effort during its reorganization efforts to collect as much of its accounts receivable as possible as its very ability to reorganize hinged on its ability to generate cash proceeds. As the Court will recall and as reflected on the pleadings of record in the case, health care receivables, unlike many other types of receivables, are greatly discounted from face value as insurance companies almost always negotiate very substantial discounts off of face amounts claimed.

The Debtor has already taken all available measures, including contracting the collection agency NYX Health Recovery Services, LLC ("NYX") and entering into that certain Accounts Receivable Recovery Agreement (the "NYX AR Agreement") to collect the Accounts. The

5

Debtor retained NYX, an independent company that specializes in pursuing collections of health care related receivables, early in the case to assist it with collecting its aged (120 days +) accounts receivable for a period of one year covering 2017 (the "Accounts Receivables"). NYX would be paid a commission of 20% of actual funds collected. Over the course of NYX's services, NYX took over the bulk of aged Accounts Receivables with such Accounts Receivables being replenished as the accounts receivable were rolling through the various aging buckets. During the last year of operations, the Debtor's Accounts Receivables dropped from over $6 million a month to less than a $1 million per month.

At present, the remaining Accounts Receivables range from ten months old to several years old. In the Debtor's business judgment, it is no longer economically feasible to continue to try to collect on the remaining outstanding aged Accounts Receivables. Indeed, NYX advised Debtor in December 2017 that it was unwilling to renew its agreement to continue to pursue collections of the Accounts Receivables as it was no longer economically feasible for them to pursue such collection efforts. Despite extensive efforts (NYX billed out about a total of $38,911,610.29), NYX was able to collect less than .5% on each dollar owed which unfortunately is more common than not for these types of receivables.

Debtor respectfully submits that it has realized the remaining economic value of the Accounts Receivables and that a Chapter 7 trustee would in all likelihood not be able to generate any additional recoveries; certainly not in sufficient amounts to pay both its Chapter 7 expenses and the current shortfall of Chapter 11 administrative expenses which exceeds $300,000.00.

Indeed, a subset of accounts receivable that the Debtor had previously abandoned and did not reflect on its books in the face amount of about $166,000,000 was sold with this Court's approval after an extensive marketing effort for a possible net to the estate (assuming no post-closing claims by the buyer) of $224,000, a return of .001349 on the dollar. NYX actually outperformed this percentage (roughly .5%) but it highlights the extreme practical challenges of trying to recover these types of accounts and the extreme discount on the older accounts receivable.

While there is a remaining subset of patient accounts receivable which has not been sold, NYX has analyzed these accounts and determined that they could not be sold on the exchange marketplace due to missing or incorrect basic patient information such as name, address, date of birth, phone number, social security number, etc. NYX has further informed us that this type of information is heavily relied upon by buyers of such accounts receivable to track down patients in order to be able to collect the account. The Debtor has already tried selling these accounts as part of its last sale but the purchaser asked that any accounts missing basic patient information be removed from the sale. NYX has further advised the Debtor that someone may be successful in collecting a small fraction of these accounts but to get to that point, such recovery may not enough to cover the costs associated with the collection activity. (*See* Declaration of Greg Wachowiak filed contemporaneously herewith).

The only remaining duty is to distribute funds to the Debtor's three administrative claimants which claimants all support the dismissal of the case. Thus, it is in the best interest of the creditors to dismiss the case because the Debtor's operations no longer exist and Debtor's

7

assets have been liquidated and any continuation of proceedings will only lessen the amount of funds which are currently available for distribution. As it stands now, and not including the substantial additional time undersigned counsel has been forced to expend on the case since its last fee application, the estate will be over $300,000 short of being able to pay allowed administrative claims in full. It would be the administrative claimants who would benefit most if they believed the appointment of a Chapter 7 trustee would be in theirs and other creditors' best interest. It is quite telling that none of the administrative claimants, the parties most directly impacted, supports such a conversion. In addition, there have been no objections filed by any creditors of the Debtor's estate to the relief being sought. *See In re Buffet Partners, L.P.*, 2014 WL 3735804 *1, *4 (Bkrtcy.Ct.N.D.Tex., July 28, 2014) (approving structured dismissal where not one party with an economic stake in the case has objected to the dismissal in this manner).

Second, the dismissal of the case satisfies the best interest of the estate test. The most essential requirement for assessing the interests of the estate is determining what maximizes the estate from an economic analysis. *See OptInRealBig.com,* 345 B.R. at 290. Here, dismissal of the case will maximize the value of the Debtor's estate in comparison to converting the case to a Chapter 7 liquidation. This is because all assets have already been liquidated and the proposed distribution of remaining funds is in accordance with the priority under the Bankruptcy Code and as contemplated by *Jevic*; thus, a Chapter 7 liquidation is unnecessary. A conversion would only impose additional unwarranted administrative costs on the Debtor's estate, would both delay and potentially substantially reduce the distribution of funds to the Debtor's remaining three administrative claimants, and would provide no benefit to Debtor's creditors. Dismissal of the

8

case is the best option because the Debtor has only one remaining duty; to distribute the remaining funds to the Debtor's three administrative claimants.

Furthermore, similar dismissals have been authorized by others courts in Georgia, most recently by Judge Hagenau of this Court in ruling from the bench on June 14, 2018. *See In re Helio E. Bernal, Zoila Bernal*, 17-65617, ECF No. ___ (2018); *See also In re Spring Hill Mobile Partners, LLC*, 12-51767, ECF No. 114 (2013), *In re Main Street Commons, LLC*, 15-51026, ECF No. 120 (2015); *In re Rohrig Investments, LP*, 13-53483, ECF No. 1105 (2015).

Therefore, because the Court is required to find dismissal is in the best interests of the creditors before rendering such an order; the creditors' interests are sufficiently protected. Moreover, the best interest of the creditors and best interest of the estate tests provided by 11 U.S.C. § 1112(b) both lend themselves to the Debtor's request for dismissal being granted.

## C. The Debtor's proposed dismissal of the case is the most efficient and expeditious administration that maximizes the return to creditors.

The Debtor's proposed dismissal should be granted because the dismissal is the most efficient and expeditious administration of this case which also maximizes the return to creditors, and "cause" exists for such dismissal. Under section 1112(b) of the Bankruptcy Code, a court may dismiss a debtor's Chapter 11 case "for cause." 11 U.S.C. § 1112(b). Section 1112(b) states, in pertinent part:

> (b) ...on request of any party in interest or the United States trustee or bankruptcy administrator, and after notice and a hearing, the court may... dismiss a case under this chapter... for cause...

9

11 U.S.C. § 1112(b). Despite the Trustee's implication that here the Debtor's only "cause" for dismissal of the case was a "desire to make an end run around a statute;" statutory authority and case law support the dismissal of the case for Debtor's actual claimed "cause" – the inability to effectuate a plan of reorganization. Section 1112(b) provides a non-exclusive list of grounds for dismissal. 11 U.S.C. § 1112(b)(4); *See In re All Am. of Ashburn, Inc.*, 40 B.R. 104, 107 *(Bankr. N.D. Ga. 1984*; *In re Blunt*, 236 B.R. 861, 864 (Bankr. M.D. Fla. 1999). One of these grounds is the inability to effectuate a plan of reorganization. 11 U.S.C. § 1112(b)(4); *See Ashburn, Inc.*, 40 B.R. at 107; *Preferred Door Co.*, 990 F.2d at 549; *Sullivan Cent. Plaza I*, 935 F.2d at 728. A court may dismiss a debtor's case where it is reasonably shown that the Debtor is unable to effectuate a plan. 11 U.S.C. § 1112(b)(4).

An inability to effectuate a plan arises when a debtor lacks the capacity to formulate or carry out a plan or where the "core" for a workable plan of reorganization does not exist. *See Blunt,236 B.R. at 865* (cause found to dismiss debtor's case under Section 1112(b)(2) where "core" for a workable plan of reorganization found to be nonexistent); *see Preferred Door*, 990 F.2d at 549 (inability to effectuate a plan arises where debtor lacks capacity to formulate a plan or carry one out). A determination of cause is made by the court on a case-by-case basis. *See Albany Partners*, 749 F.2d at 674; *see In re Brooks,* 488 B.R. 483, 490 (Bankr. N.D. Ga. 2013). Decisions for dismissal are specially delegated to the bankruptcy court's sound discretion. *See Blunt*, 236 B.R. at 866; *see In re Camden Ordinance Mfg. Co. of Arkansas. Inc.*, 1999 WL 587790, at *2 (Bankr. E.D. Pa. 1999); *see also Preferred Doo.*, 990 F.2d at 549 (a court has broad discretion to dismiss a bankruptcy case). Moreover, the legislative history of Section

10

1112(b) indicates that courts have broad discretion when using equitable powers to dispose of a case. H.R. Rep. No. 595, 95th Cong., 1st Sess. 405 (1977); S.Rep. No. 989,95th Cong., 2d Sess. 117 (1978), reprinted in 1978 U.S.C.C.A.N. 57878; *Albany Partners*, 749 F.2d at 674.

Here, it is impossible for the Debtor to effectuate a plan of reorganization because the Debtor no longer operates an ongoing business and the Debtor has no remaining assets to liquidate. (Motion, Page 2). As such, there is no business to reorganize. Even the Trustee acknowledges that Debtor is administratively insolvent and that Debtor would be unable to confirm a liquidating plan. (Objection, Page 5, Footnote 1).

While it may be possible to convert to a Chapter 7, the additional expense to do so would reduce the ultimate return, would delay distributions to the remaining administrative claimants, and would provide no economic benefit to the parties most directly impacted by a conversion. A Chapter 7 conversion is not cost effective in this case. Furthermore, despite the Trustee's belief that a Chapter 7 conversion would lead to the recapture of payments made within 90 days prior to the filing of the case, throughout the case, Debtor undertook efforts to try to collect pre-petition payments to insiders. Such efforts were fruitless for Debtor and even contributed to the parent entity of one of the insiders (Premiere Worldwide) to filing bankruptcy. The other insider who still owes the estate approximately $330,000 is subject to a significant superior federal tax lien (approximately $2.5 million) which makes collection activity extremely unlikely to produce fruitful results. The CEO of Debtor, an independent individual who has no ownership interest in the Debtor, has evaluated potential claims of the estate against insiders and otherwise and other than actions already taken in the case, does not believe there are additional cost-effective claims

11

that can be brought which will generate meaningful recoveries to cover the expenses associated with same and generate some net recovery to the estate. On the contrary, conversion to Chapter 7 can have the opposite effect which is that whatever remaining funds are left are spent on unproductive collection activity.

Similarly, the U.S. Trustee suggests that certain avoidable preference claims may exist. However, success with respect to any avoidance actions is not assured as the Debtor expects that ordinary course, contemporaneous exchange, and new value defenses may be raised in response to same. Even assuming for the sake of argument that some are worthy of pursuing, the benefit would go directly to the three administrative claimants. Considering that none of the administrative claimants desire to pursue any such claims, Debtor respectfully submits that there are insufficient grounds to convert the case to pursue claims that the beneficiaries do not want pursued. It is anticipated that even if pursued, one can expect a strong defense, including ordinary course and new value. Furthermore even if Debtor was 100% successful, the amounts would still not be sufficient to pay outstanding administrative claims, and administrative claimants are actually the ones who will most benefit from pursuing such claims, giving further indication of the questionable value of pursuing such.

A Chapter 7 conversion would not be cost effective and it would merely delay the remaining claimants from receiving proceeds on a pro-rata basis in accordance with the Bankruptcy Code's priority. Trustee argues that proposed distributions will somehow be creating a "class within a class." [Objection, Page 6]. Yet, Debtor clearly states in the Motion that all distributions would be pro-rata and in accordance to the Bankruptcy Code priority scheme. To clarify, Debtor intends

12

to make a pro-rata distribution to administrative claimants and all U.S. Trustee fees due **prior** to dismissal to ensure that it is under the Court's review and to leave in the Debtor's account the remaining reserve of $37,500 per the terms of the Court approved contract on the sale of certain accounts receivable and a nominal amount proposed as $10,000 needed to pay the CEO on an hourly basis for actual time spent in handling any remaining actions needed to administer the remaining $37,500 which is expected to be released for distribution by January 2019.

A dismissal of the case will preserve the important policy of the Bankruptcy Code to have creditors be treated equally because all claims under Section 507(a) of the Bankruptcy Code will be paid on a pro-rata basis from the remaining funds in the Debtor's estate. Therefore, it would be impossible to create a "class within a class" because all remaining administrative claimants will be treated equally if the Court dismisses the Bankruptcy Case and authorizes the pro rata distribution of the remaining funds. As an additional clarification, none of the administrative claimants will seek payment for any time expended post-dismissal from remaining funds without first seeking authority from this Court.

In sum, this Court should use its broad grant of discretionary authority to find that the Debtor has met its burden of proof and that the case should be dismissed under Section 1112(b) for cause due to the inability to effectuate a plan of reorganization. Allowing dismissal of the Debtor's case and authorizing distribution now will further the Bankruptcy Code's goal of the efficient administration of the Debtor's estate that maximizes the return to the creditors. The Debtor submits that it has demonstrated that the Debtor's creditors and estate will be better served if the case is dismissed. In order to maximize the return to creditors, and to expedite the

distributions, the Court should authorize the Debtor to distribute the remaining estate funds to the Debtor's three administrative claimants in accordance with the Bankruptcy Code's priority scheme and dismiss the case.

In addition, pursuant to 11 U.S.C. Section 349(b), the Debtor requests that the Court, for cause shown, provide that all orders, judgment, or transfers of property entered or authorized in the above-captioned case, including but not limited to, orders which dealt with the administration of assets, payment to secured creditors, administrative claimants, sale of assets through auction or otherwise and expenses related thereto, remain in full force, and valid and effective notwithstanding such dismissal and that the Court retain jurisdiction for the purposes of addressing any issues that may arise in connection with the same.

Attached hereto is a revised proposed Order granting the Motion which Debtor submits addresses the issues which have been raised.

WHEREFORE, Debtor respectfully requests that the Court grant the Debtor's Motion and approve the structured dismissal providing for the pro rata distributions to the three remaining administrative claimants in accordance with the priority scheme set in the Bankruptcy Code from Debtor's available funds prior to the actual dismissal and any such other and further relief as the Court may deem just and proper.

Respectfully submitted this 18th day of June, 2018.

                                          JAMES-BATES-BRANNAN-GROOVER-LLP
                                          By:    /s/ J. William Boone
                                                       J. William Boone
                                                       Georgia Bar No. 067856
                                                       Doroteya N. Wozniak
                                                       Georgia Bar No. 627491
                                                       3399 Peachtree Road, N.E., Suite 1700
                                                       Atlanta, Georgia 30326
                                                       (404) 997-6020
                                                       (404) 997-6021 (fax)
                                                       bboone@jamesbatesllp.com
                                                       dwozniak@jamesbatesllp.com

                                                       *Counsel for Confirmatrix Laboratory, Inc.*

**Exhibit "A"**

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CONFIRMATRIX LABORATORY, INC., | ) | Case No. 16-69934-PWB |
| | ) | |
| Debtor. | ) | |
| | ) | |

**ORDER GRANTING CONFIRMATRIX LABORATORY, INC.'S
MOTION TO DISMISS**

The Motion to Dismiss (ECF No. 244) (the "**Motion**") having been filed by Debtor Confirmatrix Laboratory, Inc. (the "**Debtor**"); notice of the Motion having been served on all creditors and parties- in-interest; other than that of the United States Trustee, no objections were raised by any creditor or other party-in-interest at or before the June 19, 2018 hearing on the Motion; and the United States Trustee's objection being resolved as provided herein; accordingly, it is hereby

ORDERED that the Motion is GRANTED as provided herein; and it is

FURTHER ORDERED that, as a condition of dismissal of Debtor's Bankruptcy Case No. 16-69934-PWB (the "**Bankruptcy Case**"), Debtor shall file all monthly operating reports to cover all time through the dismissal of the case and make the following disbursements of its remaining funds on hand: (i) payment of all outstanding United States Trustee fees as calculated by the United States Trustee's office; and (ii) pro-rata distribution to James-Bates-Brannan-Groover-LLP, Smith & Howard, P.C. and Anthem Blue Cross Blue Shield of all remaining amounts (except $37,500 which are subject to release per previously approved purchase and sale agreement and $10,000 for payment of reasonably-documented hourly expenses) and as funds

16

become available in accordance with the priority scheme set out under the Bankruptcy Code; and it is

FURTHER ORDERED that, within three (3) business days after the completion of all of the above-referenced disbursements, Debtor shall, via a filed pleading on the docket, notify the Court (i) that all the above conditions of dismissal have been satisfied, (ii) whether, after consulting with counsel for the United States Trustee, the United States Trustee is in agreement with the same, and (iii) that dismissal of Debtor's Bankruptcy Case is appropriate; and it is

FURTHER ORDERED that cause exists under Section 349(b) of the Bankruptcy Code for this Court to find that any dismissal of the Bankruptcy Case shall not vacate any prior order, judgment, or transfer of property entered or authorized in the Bankruptcy Case and all such orders, judgments, and transfers shall remain valid and effective notwithstanding such dismissal; and it is

FURTHER ORDERED that the Court shall retain jurisdiction to interpret this Order or any previously entered orders in this case.

**END OF DOCUMENT**

Prepared by:
/s/ J. William Boone
J. William Boone
Georgia Bar No. 067856
Doroteya N. Wozniak
Georgia Bar No. 627491
3399 Peachtree Road, N.E.
Suite 1700
Atlanta, Georgia 30326
(404) 997-6020
(404) 997-6021 (fax)
bboone@jamesbatesllp.com
dwozniak@jamesbatesllp.com
*Counsel for Confirmatrix Laboratory, Inc.*

*See Attached Distribution List*

## **DISTRIBUTION LIST**

James H. Morawetz
Office of the U.S Trustee
362 Richard Russell Bldg
75 Ted Turner Drive, SW
Atlanta GA  30303

Joseph C. Klein, Esq.
Associate General Counsel
Anthem Blue Cross & Blue Shield
4362 Irwin Simpson Rd, Mail Point OH010-A220
Mason Ohio  45040-9498

Smith & Howard, P.C.
271 17th Street, NW
Suite 1600
Atlanta, GA  30363

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| IN RE: | Chapter 11 |
|---|---|
| CONFIRMATRIX LABORATORY, INC., | Case No.: 16-69934-PWB |
| Debtor. | |

## CERTIFICATE OF SERVICE

I hereby certify that on this day, I served true and correct copies of the foregoing pleading by filing same with the CM/ECF electronic-filing system and depositing same in the United States mail, with adequate first class postage affixed thereon, properly addressed to the parties on the service list as follows:

See Attached Distribution

This 18th day of June, 2018.

*/s/ J. William Boone*
J. William Boone
Georgia Bar No. 067856
Doroteya N. Wozniak
Georgia Bar No. 627491
3399 Peachtree Road, N.E.
Suite 1700
Atlanta, Georgia 30326
(404) 997-6020
(404) 997-6021 (fax)
bboone@jamesbatesllp.com
dwozniak@jamesbatesllp.com

19

## Distribution List

James H. Morawetz
Office of the U.S Trustee
362 Richard Russell Bldg
75 Ted Turner Drive, SW
Atlanta GA  30303

Joseph C. Klein, Esq.
Associate General Counsel
Anthem Blue Cross & Blue Shield
4362 Irwin Simpson Rd,
Mail Point OH010-A220
Mason Ohio  45040-9498

Smith & Howard, P.C.
271 17th Street, NW
Suite 1600
Atlanta, GA  30363